IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FAST 101 PTY LTD.,

    Plaintiff,

v.

CITIGROUP INC. and CITIBANK, N.A.,

    Defendants.

Civil Action No. 19-1819-RGA

MEMORANDUM OPINION

Raymond H. Lemisch and Sean M. Brennecke, KLEHR HARRISON HARVEY BRANZBURG, LLP, Wilmington, DE; and Robert R. Brunelli, Matthew C. Holohan, and Tara K. Hawkes, SHERIDAN ROSS P.C., Denver, CO, Attorneys for Plaintiff.

Kelly E. Farnan and Valerie A. Caras, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; and Howard Wizenfeld and Maegan A. Fuller, CADWALADER, WICKERSHAM & TAFT LLP, New York, NY, Attorneys for Defendants.

January 30, 2020


**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Defendants' Motion to Dismiss for failure to state a claim. (D.I. 14). I have reviewed the parties' briefing. (D.I. 15, 17, 20). Because I find that none of the claims in the Asserted Patents claim patent-eligible subject matter, I will grant Defendants' motion.

## I. BACKGROUND

Plaintiff alleges Defendants infringe all of the claims of U.S. Patent Nos. 8,515,867 ("the '867 patent"), 8,660,947 ("the '947 patent"), 8,762,273 ("the '273 patent"), 9,811,817 ("the '817 patent"), and 10,115,098 ("the '098 patent") (collectively, the "Asserted Patents"). The Asserted Patents, all of which have a common specification, "relate[] generally to data processing systems, and more particularly, to electronic trading and settlement systems." (D.I. 1, Ex. 1 at 1:19-21). The patents claim priority to an Australian patent application filed on May 3, 1999. (*Id.* at 1:6-14).

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (D.I. 14). Defendants argue that none of the claims in the Asserted Patents claim patent-eligible subject matter, and thus are all invalid under 35 U.S.C. § 101. (D.I. 15). Defendants also contend that Plaintiff has failed sufficiently to plead indirect or willful infringement of any of the claims of the Asserted Patents.

I find Claim 1 of the '867 patent representative of all 234 claims of the Asserted Patents for the purposes of determining whether the claims recite patent-eligible subject matter. First, the independent claims in the remaining patents recite the same concept as described in the '867 patent, an incentive system applied to trade between a customer, a supplier, and a provider of funds. The dependent claims discuss, for example, variations in "incentive amount" based on

1

different factors,[1] a "message" containing the various amounts involved in the financial transaction,[2] an "agreement" between the provider of funds and the supplier,[3] and an "electronic network" used to communicate a message.[4] Plaintiff argues that these additional limitations add inventive concepts to the claims. (D.I. 17 at 15). But none of these asserted limitations in the dependent claims offer any improvement—or even significant variation— in technical functioning of the claimed invention.

Because all of the independent claims of the remaining patents recite the same concept as described in the '867 patent, and the dependent claims offer only minor, non-technical variations, I will consider claim 1 of the '867 patent as representative of the other claims in the Asserted Patents. *See Content Extraction & Transm'n LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). "[C]ourts may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

The claims recite a system to: (1) receive an order from a customer, (2) store the order, (3) determine a discount, (4) pay a supplier a discounted amount from a fund provider, and (5) receive customer payment at a later date. (D.I. 1). Representative claim 1 recites:

> A system configured for electronic settlement of an order placed by a customer with a supplier comprising:
>
> one or more bank servers, at least one of the one or more bank servers receives a message related to the order, the message comprising at least an order amount;

---

[1] *See* '876 Patent at Cls. 2, 6, 17; '947 Patent at Cls. 6, 32, 47, 51, 55, 76, 80, 84, 102, 107, 111, 129, 137, 155, 159; '273 Patent at Cls. 3, 10, 17.
[2] *See* '876 Patent at Cl. 5; '947 Patent at Cls. 2, 5, 12, 31, 46, 54, 75, 83, 101, 110, 128, 133, 136, 154, 158; '273 Patent at Cls. 10, 21, 31.
[3] *See* '876 Patent, Cls. 7, 14; '947 Patent, Cls. 7, 15, 23, 26, 38, 41, 56, 67, 70, 85, 93, 96, 112, 120, 123, 138, 146, 149.
[4] *See* '876 Patent, Cl. 9; '947 Patent, Cls. 9, 17, 58, 87, 114, 140; '098 Patent, Cls. 9, 20, 30.

a database associated with at least one of the one or more bank servers that stores the order amount;

one or more processors associated with at least one of the one or more bank servers that determines an incentive amount, wherein the incentive amount is determined based at least in part on one or more fiscal attributes of the customer and the order amount; and

a payment gateway associated with at least one of the one or more bank servers, the payment gateway electronically transfers to a supplier account on a first date an early payment for the order, the supplier account associated with the supplier, wherein the early payment is less than the order amount by at least the incentive amount, and the payment gateway that electronically receives a customer payment from a customer account on a second date, the customer account associated with the customer, wherein the customer payment is not less than the early payment plus an interest amount, wherein the interest amount is based at least in part on a credit period, wherein the credit period is an amount of time between the first date and the second date.

## II. LEGAL STANDARD

### a. Patent-Eligible Subject Matter

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018). This is, however, appropriate "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has

recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 215 (2014). The purpose of these carve-outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293–94 (internal quotation marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 72 (emphasis omitted).

The Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (quoting *Bilski*, 561 U.S. at 610-11).

4

Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

"Patent eligibility under § 101 is a question of law that may contain underlying issues of fact." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1165 (Fed. Cir. 2019). Whether a claim is drawn to patent-eligible subject matter "is a matter of both claim construction and statutory construction." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). Claim construction is a question of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)).

### III. DISCUSSION

#### a. Patent Eligible Subject Matter

##### i. The Asserted Patents Claim an Abstract Idea

The claimed invention comprises "methods and systems . . . [which] provid[e] an invoiceless trading system that creates incentives for customers to pay suppliers within a predetermined period of time, such as a settlement period." (D.I. 1, Ex. 1 at Abstract). The incentive system between suppliers and customers uses "an intermediary settlement institution, such as a bank." (D.I. 1 at ¶ 30). Defendants argue that the claims fail under step one of the *Alice* framework for claiming the abstract idea of an intermediated settlement system, the same abstract idea presented in *Alice*. (D.I. 15 at 8; *see Alice*, 573 U.S. at 219-21). In *Alice*, the claims "involve[d] a method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk." 573 U.S. at 219. Like *Alice*, these claims describe a

5

method of exchanging financial obligations between two parties by the use of a third-party intermediary.

Distinguished from the facts in *Alice*, the claims further recite "an incentive amount" (*i.e.*, a discount) for an early payment, which is facilitated by having the bank pay the supplier and receive customer payment at a later date. (D.I. 1, Ex. 1 at 8:56-60). Although the idea of providing a discount for early payment was not discussed in *Alice*, Defendants argue that the idea of providing a discount for early payment is "merely a marketing and advertising concept," which the Federal Circuit has held to be an abstract idea. (D.I. 15 at 1, citing *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (finding tailored advertisement to be an abstract idea)). Whether or not the discounting concept can be considered marketing, the Federal Circuit has found that calculating an amount based on fiscal attributes to be an abstract idea. *Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016).

Plaintiff argues that the Asserted Patents are drawn to "a particular improvement in the functioning of prior art," and thus are not drawn to an abstract idea. (D.I. 17 at 7, citing *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 898 (Fed. Cir. 2019)). The cited case law, however, is irrelevant with regards to supporting Plaintiff's claim because Plaintiff goes on to describe an incentive system designed to encourage customer and supplier participation in "existing trading and settlement systems." (D.I. 17 at 7, citing Ex. 1 at 2:66-3:5). The patents do not claim "a particular improvement in *how* this is done." *See Uniloc*, 772 F. App'x at 897. The "incentive system," rather, is "at the heart of the claimed invention." (D.I. 17 at 17). I am thus convinced that the Asserted Patents claim an abstract idea.

### ii. The Asserted Patents Contain No Inventive Concept

6

Plaintiff states that the Asserted Patents claim technology that improves upon identified existing systems but offers little support for this contention. (D.I. 17 at 3). The complaint pleads that (1) "claims of the Patents-in-Suit go beyond well-understood, routine, conventional activities," (2) "existing electronic trading systems such as Internet-based trading systems had significant limitations," and (3) the claimed incentive calculation method was an improvement over deficient prior art incentive systems. (D.I. 1 at ¶¶ 14, 15, 30).

In its complaint, Plaintiff acknowledges that "prior art systems could calculate discounts," but alleges that the inventive concept in its patents is directed to "calculated incentives based on the circumstances of the transaction itself, such as the customer's credit standing or the timing of payment." (D.I. 1 at ¶ 15). I do not find that providing a discount based on early payment and a customer's credit rating is a practice that transforms the claims beyond "a fundamental economic practice long prevalent in our system of commerce," similar to the concepts of "hedging risks" in *Bilski* and "intermediate settlement" in *Alice*. *See Alice*, 573 U.S. at 219-21 (holding "the concept of intermediated settlement is 'a fundamental economic practice'" and is "squarely within the realm of 'abstract ideas'"); *Solutran,* 931 F.3d at 1166-67 (holding "crediting a merchant's account as early as possible while electronically processing a check" is an abstract idea). Plaintiff acknowledges in its complaint that "existing electronic trading systems such as Internet-based trading systems" "could calculate discounts for an item to be offered for purchase." (D.I. 1 at ¶¶ 15, 30).

Despite Plaintiff's assertion to the contrary, the Asserted Patents also fail to offer a specific improvement in banking technology. *See* D.I. 17 at 9-10. The complaint specifically states that the inventor developed an electronic system "based on incentives that would encourage participation in the system among all participants in the transactions." (D.I. 1 at ¶ 15,

7

citing D.I. 1, Ex. 5 at 2:9-15). The claims do not provide a technical solution to the problem of participation. Instead, the claims offer an incentive to use the electronic trading system. (D.I. 1, Ex. 1 at 2:9-25). The various improvements are described as including "incentives to embrace e-commerce," "increased cash flow," "cost reduction," and "increased profits." (D.I. 1 at ¶ 26, citing Ex. 1 at 4:5-11, 4:15-51). None of these features are technical improvements. It may be "well-settled that improvements to the functioning of prior art technical systems constitute inventive concepts that establish patent eligibility under Section 101." (D.I. 17 at 9, citing *SRI Int'l, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, 1300 (Fed. Cir. 2019); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1309 (Fed. Cir. 2019); *Ancora Techs., Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1344 (Fed. Cir. 2018)). But here, there is no cognizable improvement to the functioning of a prior art technical system at all.

Plaintiff attempts to distinguish its incentive system as being "implemented through a specific arrangement of technical components." (D.I. 1 at ¶ 15, citing Ex. 1 at 3:25-32, 3:36-38, 3:45-54, Fig. 1A, Fig. 4.). Plaintiff insists that the asserted claims involve "a specially-designed and unique payment gateway," which sets the claimed technology apart from a solution that simply uses known electronic components. (D.I. 17 at 2, citing D.I. 1 at ¶ 17; *see* D.I. 1, Ex. 1 '867 patent at 5:66-67). The specification, however, describes generic servers and computers performing routine, well-understood and conventional functions. (D.I. 1, Ex. 1 at 5:23-66). While I normally accept whatever claim construction the plaintiff proffers at the Rule 12(b)(6) stage, to the extent that Plaintiff argues that the claimed phrase "payment gateway" should be construed as "a specially-designed and unique payment gateway," this is simply implausible.[5]

---

[5] The patent specification describes the gateway in terms of conventional commercially-available browsers and products that facilitate the transfer of information such as "Netscape Navigator browser, from Netscape Communications Corp., and Internet Explorer browser, from Microsoft

8

In implementing the intermediated settlement system, the claimed system describes utilizing a "gateway," akin to an internet or intranet service, with optional additional functions such as security measures or "translation, logging, and forwarding services." *See* D.I. 1, Ex. 1 at 3:41-56. The claims recite functionality such as "receiv[ing]" a message, "determin[ing]" an incentive amount, "transfer[ring]" payment and "electronically paying." *See, e.g. id.* at 8:49-9:07, Ex. 2 at 10:35-47. The claimed "bank server" moreover uses a generic server that includes well-known and conventional settlement software. (*Id.* at 1:44-50, 5:57-67). As further examples, the claimed database and processor are described in the specification as using components such as "memory" and "CPU," which were also well-known and conventional at the time of the Asserted Patents' priority date. (*Id.* at 5:57-67).

The Federal Circuit has held that the type of computer functionality described in the Asserted Patents is routine and conventional. *See Content Extraction*, 776 F.3d at 1348 (holding "processing technology to recognize and store data" is "well-understood, routine and conventional"); *In re Greenstein*, 778 F. App'x 935, 939 (Fed. Cir. 2019) (holding "stor[ing], process[ing], and transmit[ting] information" is "generic use of a computer"); *OIP Techs, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (holding that "'determin[ing]' an estimated outcome and setting a price" as well as "sending a first set of electronic messages" are well-understood, routine and conventional) (citation omitted).

The Asserted Patents also fail to explain how the generic components actually accomplish what is disclosed in the claims, instead reciting results-oriented functionality such as "sending" and "receiving" orders and messages, "transferring" payment, and "determining" an

---

Corp." and the "AT&T INTERCOMMERCE gateway, available by AT&T." (D.I. 1, Ex. 1 at 3:41-56, 5:23-36). "Gateway" as described in the claims uses the internet and internet browsers in their typical conventional manners, such as sending and receiving information.

9

incentive amount. *See, e.g.*, D.I. 1, Ex. 1 at 8:49-9:07; *see Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (patent-ineligible claim "requires the functional results . . . but does not sufficiently describe how to achieve those results in a non-abstract way"); *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) (claim language "provides only a results-oriented solution, with insufficient detail for how a computer accomplishes it").

None of the claimed elements, taken individually or as an ordered combination, provide the required inventive concept "'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Alice*, 573 U.S. at 218 (citation omitted). The claims contain no inventive concept because they are not directed to "an improvement in computers as tools," but instead assert an "independently abstract idea[] that use[s] computers as tools." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). The fact that the claims recite various technological components such as a "bank server" and "gateway" is not sufficient to confer patentability where the claims do not offer an improvement in the functioning of that technology. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014) (finding that where the computer functionality is generic, "[t]he claims' invocation of computers adds no inventive concept"); *see also In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612-13 (Fed. Cir. 2016) (finding that "the focus of the patentee and of the claims was not on" improved hardware because the specification described the functionality of the hardware "in vague terms without any meaningful limitations").

Encouraging participation in a system in which all parties need to utilize similar technology through the well-known concept of discounting does not offer a technical

improvement that would comprise an inventive concept. Therefore, I find that the Asserted Patents claim ineligible subject matter.

### b. Leave to Take Targeted Discovery and to Amend

The Asserted Patents claim ineligible subject matter and amending the complaint would be futile where the claims describe the implementation of a business transaction using conventional computer technology. Leave to amend Plaintiff's complaint and to conduct "targeted discovery" (D.I. 17 at 20) is therefore denied.

## IV. CONCLUSION

For the reasons stated above, I will grant Defendants' motion, and dismiss Plaintiff's complaint, without leave to amend. An accompanying order will be entered.